IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
            Plaintiff,

v.                          //   CIVIL ACTION NO. 1:12CV175
                                      (Judge Keeley)

NATHAN COGAR, KENNETH
JACKSON, ROXIE L. SIRBAUGH,
RITA UTT, SERIOUS DIESEL,
LLC, and MARIO ORELLANA,

            Defendants


MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE

        Allstate Property and Casualty Insurance Company ("Allstate")
brought this declaratory judgment action, seeking a determination
of the parties' rights and responsibilities under an insurance
policy issued to Nathan Cogar ("Cogar"). Pending before the Court
are four motions to dismiss from 1) Cogar and Serious Diesel, LLC
("Serious Diesel") (dkt. no. 11), 2) Roxie L. Sirbaugh ("Sirbaugh")
(dkt. no. 7), 3) Cogar (dkt. no. 8), and 4) Kenneth Jackson
("Jackson") (dkt. no. 10). For the reasons that follow, the Court
**GRANTS** the defendants' motions and **DISMISSES** this case **WITHOUT
PREJUDICE**.

I.

A.

        Cogar is the owner and operator of Serious Diesel, a vehicle
repair and service business. According to Allstate's complaint, on

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE**

June 16, 2011, Sirbaugh was operating a 1997 Chevrolet Blazer traveling north on West Virginia State Route 92. (Dkt. No. 1 at 2). Cogar, who was operating a 2005 Chevrolet Silverado owned by Jackson, allegedly turned in front of Sirbaugh's vehicle, causing Sirbaugh to cross the center of the roadway and strike a 2000 Ford Explorer owned and operated by Rita Utt ("Utt"). Id. at 2-3. The collision allegedly caused Utt's vehicle to be pushed backward into a 1998 Kenworth truck owned and operated by Mario Orellana ("Orellana"). Id. at 3.

According to Allstate's complaint, on the date of the accident, Cogar was insured under an Allstate auto policy, Policy No. 9 28 981961 11/03 (the "Policy"), effective May 3, 2011, to November 3, 2011. Id. at 3. Allstate alleges that, at the time of the collision, Cogar was operating Jackson's vehicle in his capacity as owner and operator of Serious Diesel for the purpose of repairing the vehicle. Id. at 3. Similarly, Cogar states that at the time of the accident he was "test-driving the vehicle with the permission of Jackson in his capacity as the owner and operator of Serious Diesel, LLC." (Dkt. No. 9 at 1).

Cogar tendered a claim to Allstate immediately after the June 16, 2011 accident, and, in a letter dated June 22, 2011,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]**
**AND DISMISSING CASE WITHOUT PREJUDICE**

Allstate denied coverage based on the business operations exclusion in Cogar's Policy. (Dkt. No. 9-1 at 2).

**B.**

In or around September 2012,[1] Sirbaugh filed suit against Cogar, Jackson, and Serious Diesel in the Circuit Court of Preston County, West Virginia, to recover for the damages she suffered as a result of the accident on June 16, 2011. Neither Utt nor Orellana is named as a party to Sirbaugh's suit.

On November 21, 2012, Allstate advised Cogar that, although his Policy did not cover the accident, it would nevertheless provide him with a "courtesy defense" subject to a full reservation of rights. (Dkt. No. 9-2 at 5). Then, on December 3, 2012, Allstate filed this declaratory judgment action, seeking the following declarations:

> 1.    "That the Allstate Policy does not extend to provide coverage for the defense or indemnification of Cogar for those claims arising from the June 16, 2011 motor vehicle accident"; and

---

[1] The briefs provide different dates for the filing of the state court action: "on September 26, 2012" (Dkt. No. 9 at 1); "on October 24, 2012" (Dkt. No. 13 at 2); "on or about September 24, 2012" (Dkt. No. 18 at 2); and "on or around September of 2012" (Dkt. No. 20 at 6). No party has attached Sirbaugh's complaint as an exhibit in this case.

    2.    "That Allstate has no duty to defend or indemnify Cogar or any other entity as to those claims arising from the June 16, 2011 motor vehicle accident."

(Dkt. No. 1 at 6).

Subsequently, on January 8, 2013, Cogar and Serious Diesel filed a motion in the Preston County proceeding seeking leave to file a third-party complaint against Allstate (dkt. no. 9-3), which Special Judge Larry Starcher granted on January 14, 2013. (Dkt. No. 20-1 at 2).

The third-party complaint in state court seeks the following declarations:

    1.    "That the Policy does extend to provide coverage for the defense and indemnification of Nathan Cogar for all claims arising from the June 16, 2011 motor vehicle accident";

    2.    "That Allstate has a duty to defend and indemnify Nathan Cogar for all claims arising from the June 16, 2011 motor vehicle accident"; and

    3.    "That Allstate has a duty to pay all attorney fees and costs which Nathan Cogar has incurred as a result of Allstate's failure to defend Nathan Cogar."

(Dkt. No. 9-3 at 9).

The defendants contend that this Court should dismiss Allstate's declaratory action or issue a stay pending determination of the insurance coverage issues in the parallel state court proceeding.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11] AND DISMISSING CASE WITHOUT PREJUDICE

### C.

According to Allstate's complaint, on June 16, 2011, the date of the accident, the Policy "insured a 2006 Ford F250 truck, with liability limits of $100,000 per person and $300,000 per occurrence." (Dkt. No. 1 at 3). Id. In pertinent part, the Policy provides:

> **We** will pay those damages which an insured person is legally obligated to pay because of:
>
> 1.   **bodily injury** sustained by any person; and
>
> 2.   **property damage**.
>
> Under these coverages, **your** policy protects an insured person from liability for damages arising out of the ownership, maintenance or use, loading or unloading of an insured **auto.**
>
> **We** will defend an insured person sued as the result of a covered auto accident, even if the suit is groundless or false. **We** will choose the counsel. **We** may settle any claim or suit if **we** believe it is proper. **We** will not defend an insured person sued for damages arising out of **bodily injury** or property damage which is not covered by this policy.
>
> ***
>
> **Insured Persons**
> 1. While using **your** insured **auto**:
>         a)   **you**,
>         b)   any **resident** relative, and
>         c)   any other licensed driver using it with **your** permission.

2. While using a non-owned **auto**:
   a)   **you**, and
   b)   any **resident** relative using a private passenger **auto** or **utility auto.**

The use of a non-owned **auto** must be with the owner's permission.

\*\*\*

**Insured Autos**

\*\*\*

4.   A non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be available or furnished for the regular use of an insured person.

\*\*\*

**Definitions**
1.   **We, Us,** or **Our** means the company shown on the Policy Declarations of the policy.

2.   **Auto** means a land motor vehicle with at least four wheels designed for use on public roads.

3.   **Bodily Injury** means bodily injury, sickness, disease or death.

\*\*\*

6.   **You** or **Your** means the **resident** policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

\*\*\*

**Exclusions – What is not covered**

> **We** will not pay for any damages an insured person is
> legally obligated to pay because of:
>
> ***
>
> 2. **bodily injury** or property damage arising out of auto
>    business operations such as repairing, servicing,
>    testing, washing, parking, storing, or selling of
>    **autos**. However, coverage does apply to **you**, **resident**
>    relatives, partners or employees of the partnership
>    of **you** or a **resident** relative when using **your insured
>    auto.**

(Dkt. No. 9-4 at 8-10).

The final paragraph of the preceding excerpt is what is
generally known as a "business operations exclusion." The parties
dispute whether, based on this exclusion, the Policy covers the
June 16, 2011 accident.

## II.

The Federal Declaratory Judgment Act provides that district
courts "may declare the rights and other legal relations of any
interested party seeking such declaration whether or not further
relief is or could be sought." 28 U.S.C. § 2201(a). This power is
discretionary, and the Fourth Circuit has explained that "a
declaratory judgment action is appropriate 'when the judgment will
serve a useful purpose in clarifying and settling the legal
relations in issue, and . . . when it will terminate and afford

relief from the uncertainty, insecurity, and controversy giving
rise to the proceeding.'" <u>Centennial Life Ins. Co. v. Poston</u>, 88
F.3d 255, 256 (4th Cir. 1996) (quoting <u>Aetna Cas. & Sur. Co. v.
Quarles</u>, 92 F.2d 321, 325 (4th Cir. 1937)). "[A] declaration of
parties' rights under an insurance policy is an appropriate use of
the declaratory judgment mechanism." <u>United Capitol Ins. Co. v.
Kapiloff</u>, 155 F.3d 488, 494 (4th Cir. 1998).

However, a declaratory judgment action "should not be used 'to
try a controversy by piecemeal, or to try particular issues without
settling the entire controversy, or to interfere with an action
which has already been instituted.'" <u>Id.</u> at 256-57 (citing <u>Quarles</u>,
92 F.2d at 325). "When a related state proceeding is underway, a
court considering a declaratory judgment action should specifically
consider whether the controversy 'can better be settled in the
proceeding pending in state court.'" <u>Centennial Life</u>, 88 F.3d at
257 (citing <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 495
(1942)). "[A] federal court should '[o]rdinarily' decline, for
reasons of efficiency and comity, to grant declaratory relief
'where another suit is pending in a state court presenting the same
issues, not governed by federal law, between the same parties.'"
<u>Nautilus Ins. Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 377 (4th

Cir. 1994), <u>overruled on other grounds by</u> <u>Wilton v. Seven Falls</u>
<u>Co.,</u> 515 U.S. 277 (1995) (quoting <u>Brillhart</u>, 316 U.S. at 495).

In making its determination, the Court should consider "the nature and scope of the state proceeding," whether all parties' claims can be satisfactorily adjudicated in that proceeding, and "'the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.'" <u>Centennial Life</u>, 88 F.3d at 257 (quoting <u>Nautilus</u>, 15 F.3d at 376).

In <u>Nautilus</u>, the Fourth Circuit established four factors for district courts to consider:

(1)  "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts";

(2)  "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending";

(3)  "whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law"; and

(4)  "whether the declaratory judgment action is being used merely as a device for procedural fencing - that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable."

9

<u>Nautilus</u>, 15 F.3d at 377 (citations and internal quotation marks omitted). A district court has "wide discretion" in applying these factors, but "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Centennial Life</u>, 88 F.3d at 257 (citing <u>Wilton</u>, 515 U.S. at 288).

A federal court may decline to exercise jurisdiction over a declaratory judgment action whether or not a parallel state court proceeding is pending. <u>Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.</u>, 139 F.3d 419, 423 (4th Cir. 1998). A state court action's existence or nonexistence, though not dispositive, is a significant factor alongside "considerations of federalism, efficiency, comity, and procedural 'fencing.'" <u>Id.</u>

### III.

A review of the four factors from <u>Nautilus</u> counsels in favor of dismissing Allstate's declaratory judgment action.

### A.

The first factor, the strength of the state's interest in having the issues decided in state court, weighs in favor of abstention "when the questions of state law involved are difficult,

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE

complex, or unsettled," not when they involve "the routine application of settled principles of law to particular disputed facts." <u>Nautilus</u>, 15 F.3d at 377-378. Where West Virginia has already considered analogous issues, the state's interest in having the issue decided in state court is lessened. <u>Continental Casualty Co. v. Fuscardo</u>, 35 F.3d 963, 967 (4th Cir. 1994). Notably, however, "even if the issues of state law . . . are not 'close', 'problematic', or 'difficult', the fact that they are controlled by West Virginia law [can] weigh[] in favor of deference to the state action . . . 'when considered in conjunction with the other <u>Nautilus</u> factors.'" <u>State Farm Fire & Cas. Co. v. Kirby</u>, 919 F. Supp. 939, 943 (N.D.W. Va. 1996) (quoting <u>Continental Casualty Co.</u>, 35 F.3d at 967).

Under West Virginia law, the language in an insurance policy is to be "given its plain, ordinary meaning." Syl. Pt. 1, <u>W. Va. Fire & Cas. Co. v. Stanley</u>, 602 S.E.2d 483 (W. Va. 2004) (internal quotation marks and citation omitted). "Where the provisions of an insurance policy contract are clear and unambiguous, they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." <u>Id.</u> at Syl. Pt. 2 (internal quotation marks and citation omitted). Conversely, when an insurance policy provision's language "is reasonably susceptible

of two different meanings or is of such doubtful meaning that
reasonable minds might be uncertain or disagree as to its meaning,
it is ambiguous." Id. at Syl. Pt. 3 (internal quotation marks and
citation omitted). "[W]hether a contract is ambiguous is a question
of law to be determined by the court," id., and "ambiguous terms in
insurance contracts are to be strictly construed against the
insurance company and in favor of the insured." Id. at 489.

West Virginia law is clear that exclusions must be strictly
construed against the insurer. "Where the policy language involved
is exclusionary, it will be strictly construed against the insurer
in order that the purpose of providing indemnity not be defeated."
Syl. pt. 8, Nat'l Union Fire Ins. Co. of Pittsburgh v. Miller, 724
S.E.2d 343 (W. Va. 2012) (citations omitted). "An insurer wishing
to avoid liability on a policy purporting to give general or
comprehensive coverage must make exclusionary clauses conspicuous,
plain, and clear, placing them in such a fashion as to make obvious
their relationship to other policy terms, and must bring such
provisions to the attention of the insured." Russell v. Bush &
Burchett, Inc., 559 S.E.2d 36, 42 (W. Va. 2001) (emphasis added).
"'An insurance company seeking to avoid liability through the
operation of an exclusion has the burden of proving the facts
necessary to the operation of that exclusion.'" Ayersman v. W. Va.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]**
**AND DISMISSING CASE WITHOUT PREJUDICE**

Div. of Envtl. Prot., 542 S.E.2d 58 (W. Va. 2000) (citing Syl. pt. 7, National Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (W. Va. 1987)).

Here, Allstate argues that the language in its business operations exclusion is unambiguous and thus involves only the routine application of settled West Virginia law regarding insurance policy interpretation. (Dkt. No. 18 at 6). According to Allstate, Cogar's operation of an auto belonging to Jackson for the purpose of repairing the auto fits neatly within the four corner of the exclusion, precluding coverage for the accident. The defendants, on the other hand, argue that an ambiguity exists as to the business operations exclusion's exception, which provides coverage for use of "your insured auto." (Dkt. No. 9-4 at 10). Cogar maintains that he falls within the exception to the business operations exclusion because he was driving Jackson's vehicle with Jackson's permission, i.e., driving "your insured auto." Id. (emphasis added).

Although the Policy defines "[a]uto" and "[y]ou or [y]our," it does not provide a separate definition of "your insured auto," nor does it anywhere indicate what that phrase means. Id. Thus, it is not clear under the Policy that "your insured auto" necessarily refers to an auto "you" own. Because of this lack of clarity, the

phrase "your insured auto" could refer to any one of the many vehicles falling under the category of "[i]nsured [a]utos" – including a non-owned auto used with permission. Id. at 9.

Indeed, other jurisdictions have interpreted the phrase "your insured auto" to include autos in addition to those actually owned by the insured. See, e.g., Nationwide Mut. Ins. Co. v. Allstate Ins. Co., 630 N.Y.S.2d 591, 593 (N.Y. App. Div. 1995) (where "your insured auto" was not defined in policy, court added policy definitions of "your" and "insured auto" together to hold "your insured auto" included both owned and loaner autos). Inasmuch as the phrase "your insured auto" is "reasonably susceptible of two different meanings" and "reasonable minds might be uncertain or disagree as to its meaning," it is ambiguous. See Syl. Pt. 3, Stanley, 602 S.E.2d 483.

Moreover, the question of the effect of a business operations exclusion and its exception in the liability provisions of an automobile insurance policy is unresolved in West Virginia. See Carney v. Erie Insurance Co., 434 S.E.2d 374 (W. Va. 1993). Carney determined the effect of a business operations exclusion in the context of the medical payments provision of an automobile liability insurance policy. Although the exclusion at issue precluded coverage, Carney did not address the effect of a business

14

operations exclusion in a liability provision, or the particular exception to that exclusion in dispute here. 434 S.E.2d at 379. Furthermore, the court in Carney specifically noted that the medical payments provision "is separate from the liability provisions of the policy and is akin to a personal injury accident policy." Id. at 377.

Given West Virginia's clear precedent that exclusions must be strictly construed against the insurer, West Virginia has a strong interest in answering the question left open in Carney, namely, the effect of a business operations exclusion in the liability provisions of an automobile insurance policy, as well as the effect of an exception for "your insured auto." See, e.g., Nautilus Ins. Co. v. Maynard, No. 2:07-00105, 2007 WL 2963774, at *3 (S.D. W. Va. Oct. 9, 2007) ("[T]he state's interest is stronger in questions of insurance law." (quoting First Fin. Ins. Co. v. Crossroads Lounge, Inc., 140 F.Supp.2d 686, 694 (S.D. W. Va. 2001)).

Because the phrase "your insured auto" in Allstate's policy is ambiguous, it is unclear whether Cogar's permissive use of Jackson's auto falls under the business operations exclusion to coverage (in which case Cogar would not be covered) or under the exception to that exclusion (in which case Cogar would be covered). Since West Virginia has yet to determine the application of this

15

type of exclusion and exception in the context of an automobile

liability policy, it has a strong interest in having its courts

decide this issue. This factor, therefore, weighs heavily in favor

of abstention.

**B.**

The second <u>Nautilus</u> factor, efficiency, turns on whether the

issues can better be resolved in the court in which the state

action is pending. <u>Nautilus</u>, 15 F.3d at 378–79. "The relevant

question is whether considerations of judicial economy favor

dismissal of the federal action." <u>Kirby</u>, 919 F. Supp. at 943-44.

The Fourth Circuit has stated that,

> In deciding whether to entertain a declaratory judgment
> action, a federal court should analyze whether its
> resolution of the declaratory action will settle all
> aspects of the legal controversy. This court has long
> recognized that it makes no sense as a matter of judicial
> economy for a federal court to entertain a declaratory
> action when the result would be to "try a particular
> controversy by piecemeal, or to try particular issues
> without settling the entire controversy."

<u>Mitcheson v. Harris</u>, 955 F.2d 235, 239 (4th Cir. 1992) (quoting

<u>Quarles</u>, 92 F.2d at 325).

In the case at hand, Allstate has been made a third-party

defendant in the underlying state court proceeding. The state

action therefore raises the same coverage questions presented here,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE**

as well as the underlying liability issues not present in this action, all of which suggest that the state action would be the more efficient venue for resolving the rights of all interested parties. See, e.g., Christian v. Sizemore, 383 S.E.2d 810, 814 (W. Va. 1989). Allstate's only counter-argument to this is that Utt and Orellana are not named in the state action, and "are necessary parties to the determination of coverage issues presented in this [federal] action." (Dkt. No. 18 at 6-7). This argument, however, is a red herring.

It is undisputed that Utt and Orellana have made no claim - nor have they exhibited any intention of making a claim - for damages arising from the subject accident. They have never responded to Allstate's suit, nor have they so much as entered an appearance in this case. Allstate, for its part, has provided no legal authority for the proposition that such clearly disinterested parties are "necessary" to the determination of the pending coverage issues.[2]

_____

[2] The Court was similarly unable to find authority in support of the proposition that persons allegedly injured by, but who have not brought claims against, an insured are necessary parties to a declaratory judgment action brought by the insurer against the insured on coverage issues. The Third Circuit has rejected an analogous claim. See Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216 (3d Cir. 2005) (movants allegedly injured by insured were not necessary parties required under Fed. R. Civ. P. 19(a)(2) to be joined in declaratory judgment action "because their interest [did] not 'relate[] to the subject of the action'" and because they had

Accordingly, as there is no legal or factual support for Allstate's position, the absence of Utt and Orellana in the state action has no effect on the weighing of the efficiency factor.

After examining the scope of the pending state proceedings, the Court is satisfied that the claims of all parties with an interest in this action can adequately be adjudicated in the state action. See Nautilus, 15 F.3d at 378-79. Indeed, the liability issues were pending in the state court case for several months before Allstate filed this federal case; that court thus is familiar with the issues in the litigation. Therefore, to the extent that the coverage claims in both the state and federal actions are substantively identical, this factor tips slightly in favor of abstention. See Motorists Mut. Ins. Co. v. Frazier, 623 F. Supp. 2d 727, 733 (S.D. W. Va. 2009) (where the state court action and federal declaratory judgment action mirror each other, the second Nautilus factor tilts in favor of dismissal); see also Mitcheson v.

---

no legally protected interest in the action). The Fifth and Eleventh Circuits have held that persons seeking damages from an insured are necessary parties to a declaratory judgment action regarding coverage issues brought by an insurer against an insured under Rule 19(b). Ranger Ins. Co. v. United Housing of New Mexico, Inc., 488 F.2d 682 (5th Cir. 1974) (finding that those with claims against insured may be prejudiced and that there is a public interest in efficient, nonrepetitive litigation); American Safety Cas. Ins. Co. v. Condor Assoc., Ltd., 129 F. App'x 540 (11th Cir. 2005) (following Ranger, 488 F.2d 682).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE**

Harris, 955 F.2d 235, 239 (4th Cir. 1992) ("While inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof.").

### C.

Whether the third Nautilus factor, federal and state entanglement, weighs in favor of abstention hinges on whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state court systems due to the presence of overlapping issues of fact or law. In Mitcheson, the Fourth Circuit held that dismissal of the declaratory judgment action was appropriate because overlapping issues of fact and law would "'frustrate the orderly progress' of the state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution." 955 F.2d at 239 (citation omitted).

Here, there is an overlapping – and unsettled - question of law, namely, how West Virginia law applies business operations exclusions and their exceptions in automobile liability policies. The resolution of this question will determine whether the Policy covers the June 16, 2011 accident at issue in the state court

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE**

litigation. "[S]ince both actions raise[] the same core issues of law and fact, and both actions aim[] at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts [i]s a genuine possibility." Kapiloff, 155 F.3d at 494; see also Fuscardo, 35 F.3d at 968 (where same declaratory judgment issue between insurer and claimant in both state and federal cases, abstention was proper). Indeed, given the absolute identity of the coverage issues, retention of federal jurisdiction could frustrate portions of the state court proceedings. See Mitcheson, 955 F.2d at 239. This factor thus also weighs slightly in favor of abstention.

**D.**

The final Nautilus factor, procedural fencing, is largely neutral. Under this factor, the Court must consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing' — that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" Nautilus, 15 F.3d at 377 (internal citation omitted). The Fourth Circuit has stated that procedural fencing exists where "a party has raced to federal court in an effort to get certain issues that are already pending before the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]**
**AND DISMISSING CASE WITHOUT PREJUDICE**

state courts resolved first in a more favorable forum." <u>Great Am.
Ins. Co. v. Gross</u>, 468 F.3d 199, 212 (4th Cir. 2006). But even when
the parallel state court action is filed before the federal
declaratory judgment action, courts will not generally find
procedural fencing without some further evidence of forum shopping.
<u>See, e.g.</u>, <u>First Fin. Ins. Co. v. Crossroads Lounge</u>, 140 F. Supp.
2d 686 (S.D. W. Va. 2001).

Based on the timeline of events, it is apparent that both
Allstate and the defendants have engaged in some forum shopping.
The accident took place on June 16, 2011, and Allstate denied
Cogar's claim on June 22, 2011. (Dkt. No. 9-1 at 2). Sirbaugh filed
suit in state court sometime in or around September 2012. On
November 21, 2012, Allstate agreed to provide Cogar with a courtesy
defense in Sirbaugh's suit, subject to a full reservation of
rights. (Dkt. No. 9-2 at 2, 5). Subsequently, it filed this
declaratory judgment action on December 3, 2012 (Dkt. No. 1 at 1).
On January 8, 2013, Cogar and Serious Diesel filed a motion for
leave to file a third-party complaint against Allstate, which the
state court granted. (Dkt. No. 9-3).

As is apparent from this timeline, both Cogar and Allstate
waited to file their complaints for reasons that likely include
procedural fencing. Cogar could have filed a third-party complaint

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE**

against Allstate shortly after Sirbaugh filed her complaint. Instead, he waited until after Allstate filed its complaint for declaratory relief. Allstate, moreover, did not file the instant case until December 3, 2012, despite becoming aware of Cogar's demand for coverage a year and a half earlier, in June 2011. Further, although it was inevitable that coverage issues would arise in Sirbaugh's state action, Allstate nevertheless waited several months after that case was filed before filing its declaratory action in federal court.

This Court has previously held that where both parties have engaged in procedural fencing the fourth <u>Nautilus</u> factor "does not favor either party." <u>State Farm Mut. Auto. Ins. Co. v. Shingleton</u>, 2007 WL 3348462, *5 (N.D. W. Va. Nov. 8, 2007). Accordingly, this factor weighs neither for nor against abstention in this case.

**VI.**

On balance, the <u>Nautilus</u> factors tip in favor of dismissal of Allstate's claim for declaratory relief. The Court:

1.    **GRANTS** the defendants' Motions to Dismiss (dkt. nos. 7, 8, 10, 11); and

2.    **DISMISSES** this action **WITHOUT PREJUDICE** and orders that it be **STRICKEN** from the docket of this Court.

22

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT. NOS. 7, 8, 10, 11]
AND DISMISSING CASE WITHOUT PREJUDICE**

      Pursuant to Fed. R. Civ. P. 58, the Court **DIRECTS** the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record.

      It is so **ORDERED**.

Dated: May 13, 2013

                    /s/ Irene M. Keeley
                    IRENE M. KEELEY
                    UNITED STATES DISTRICT JUDGE